S. Samuel Di Falco, S.
The petitioner, alleging status as a creditor of the decedent, seeks an order compelling the administratrix to file her account (Surrogate’s Ct. Act, §§ 259, 211). The administratrix denied that the petitioner was a creditor or had any status to compel an accounting. The matter was placed upon the calendar for hearing, at which both sides offered evidence. It appears, without any dispute or any claim of surprise, that the alleged claim belonged to the petitioner’s deceased husband and that she is prosecuting it as his personal representative. The arguments advanced by respective counsel indicate some misapprehension in respect of the proof required in this proceeding and the legal effect of a granting of the application and, therefore, a brief reference to the applicable rules of law is necessary.
A proceeding to compel the filing of an accounting is the only proceeding in the Surrogate’s Court that is made explicitly available to a creditor who seeks to enforce payment of a rejected claim. Under the practice which has been developed principally by case law, it is not sufficient, to justify a compulsory accounting, that a creditor merely allege under oath that he has a valid claim. When his allegation of status as a creditor is put in issue, the Surrogate must conduct a hearing. (Matter of Eisenberg, 279 App. Div. 868.) It is not necessary, however, that the claimant establish at this hearing all of the essential elements necessary to support a judgment in his favor. He need prove only that prima facie he has such an interest as would entitle him to be heard fully upon the accounting. (Matter of Segall, 287 N. Y. 52, 57; Matter of Ahrens, 270 App. Div. 1038; Matter of Eisenberg, supra; Matter of Scheftel, 150 Misc. 3; Matter of Walters, 5 Misc 2d 830.) As Surrogate Delehauty put it: ‘ ‘ the surrogate should limit his inquiry to a determination whether prima facie or even probably petitioner has such interest. It would be going beyond the requirements of the present stage of the proceeding to make any determination as to an exact basis upon which petitioner’s claim might rest or as to whether the legal objections to petitioner’s claim as presented by the executors are valid or invalid objections.” (Matter of Scheftel, supra, p. 4.) The decision of the Surrogate on this preliminary issue of the petitioner’s interest in the estate is “ not res judicata as to the validity of the claim.” (Matter of Segall, supra, p. 57.)
In this proceeding, petitioner refused to make any stipulation that the full question of the validity of the claim be tried on *353 this proceeding. She produced only written evidence tending to establish a prima facie or probable interest.
Although the petitioner is the claimant here, her intestate is the original claimant, and for convenience we shall refer to him as the claimant. The petitioner produced a written agreement signed by the decedent wherein he agreed to pay the claimant a stated sum for effecting an agreement in relation to the sale of the decedent’s co-ownership in certain businesses. The decedent also agreed to pay a further stipulated sum in the event that certain criminal proceedings in Paris should be discontinued as against the decedent. The agreement, dated August 19,1956, was in the Czechoslovak language, and there is disagreement between the parties in respect of the translation. The petitioner translates the original text as “ assisting in the matter of the assignment of his co-ownership ”, while the respondent contends that it means ‘1 for reaching an agreement concerning the waiver (or assignment) of co-ownership ” or “ accomplishing or carrying out an agreement.” The petitioner also produced a letter written in 1958 by the decedent to the petitioner herein, the wife of the claimant, in which the decedent stated: ‘1 For almost all of 1957 I was negotiating with S. Waldes [an executive of the firm which was the subject of the 1956 contract] while living on borrowed money, but only in September 1957 did we come to an agreement whereby monthly payments would be made to settle my claim as of October 1, 1957, all of which having been achieved without any assistance whatsoever on the part of Dr. Schidlof [the claimant] as Waldes did not wish to work with him at all.” With respect to the Paris matter, the letter states that no indictment was ever entered against the decedent, and it presumably meant that there was no need to take any steps respecting the discontinuance of a criminal proceeding. The nature of the services to be rendered by the claimant in respect of that proceeding are not disclosed in the present record. The decedent, the letter continues, had an attorney in Paris who was pressing for payment of his fee. In conclusion the decedent wrote: “ I do not say that I do not intend to pay Dr. Schidlof at all, but first, we ought to come to some reasonable agreement as to the amount and to the modalities of payment.” The decedent thus admitted that something was owned to the claimant, but not the full amount promised in the agreement because of the failure of the claimant to effect the agreement which they had discussed. The decedent concedes that he himself performed the services which the claimant promised to perform, but he ascribes the claimant’s failure to the fact that the other party “ did not wish to work with him at all.”
*354 The respondent produced an officer of the Waldes firm who testified that the negotiations for the sale of the decedent’s interest had been carried on by the president of the company, the witness and the decedent, and that the claimant had nothing to do with the contract. An agreement had actually been reached with the decedent on August 10, 1956. Thereafter, the decedent endeavored to change the terms of the agreement, and, according to the testimony of this witness, the decedent and the claimant came to the office of the company and presented the revised demands. The company rejected the new demands. On August 30, the decedent and his wife expressed satisfaction with the terms as settled on August 10, and a written agreement was signed on August 30,1956, but it was dated August 10, the date of the original agreement. This witness did not testify to any refusal to deal with the claimant but rather to a refusal to modify the terms of the agreement made on August 10. His recollection of the events and the agreements is somewhat at variance with the decedent’s description of them in his letter to the petitioner.
The parties argue as to the right of the petitioner to recover under one or the other set of facts which they, respectively, conceive as having been established in the record. The variety of litigable questions is at once apparent. First, there is the correct translating of the Czechoslovak text. Was the decedent’s promise conditioned upon the claimant’s actually effecting an agreement giving the decedent the additional benefits which the claimant held out to him, or did the claimant promise only to render assistance in the sale of the decedent’s interests? Even if the decedent’s promise was so conditioned, was the claimant prevented from performing his part of the bargain by the wrongful act of the decedent (5 Williston, Contracts [Bevd. ed.], § 1293A; Bestatement, Contracts, § 315) or did the claimant fail to perform his part of the agreement through no fault on the part of the decedent? If the claimant is entitled to recover on the contract, what is the measure of his damages?
The respondent is correct in the argument that the present record does not permit a decision of these matters, and hence would not justify a finding that the petitioner has a valid claim for a specific sum of money. The record does, however, indicate that the claimant has such an interest as, under the authorities, entitles him to be heard fully upon the accounting. There appears to be little doubt that the contract between the decedent and the claimant was in fact made, that the claimant rendered some preliminary service, but that the principal negotiations were carried on by the decedent without the claimant. The real reason for the claimant’s failure to conclude the negotiations *355 is not presently clear. The real meaning of the contract is not presently clear, hut its construction depends not only upon a correct translation but also upon the relevant background facts against which it is to be read. What the record does contain, however, is the decedent’s implicit concession in his letter that something was due to the claimant under the contract, and while this evidence is not sufficient to establish the validity of the claim it is sufficient to indicate prima facie his status as a creditor and petitioner’s right to be heard fully upon an accounting.
The administratrix is directed to file her account within 60 days.